■ Tony Stevens et al., Respondents, v Homiak Transport, Inc., et al., Appellants, et al., Defendant. [800 NYS2d 157]—

Order, Supreme Court, New York County (Milton A. Tingling, J.), entered August 19, 2004, which denied defendants-appellants' motion for summary judgment dismissing the complaint on the ground that plaintiffs failed to meet the serious injury threshold of Insurance Law § 5102 (d), unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint as against them.

Plaintiffs' submissions in response to defendants' motion for summary judgment are insufficient to raise a triable issue of fact as to whether either plaintiff suffered, as claimed, "significant limitation of use of a body function or system," or "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (Insurance Law § 5102 [d]).

Both plaintiffs saw Dr. Samuel Melamed soon after the November 1999 accident. Plaintiff Stevens was referred for MRI testing and a course of physical therapy. He testified that he was given an elastic back support device, which he used for two or three weeks, and a similar neck brace, which he wore for a week. His therapy consisted of sitting under a sun lamp and performing back-stretching exercises. He underwent this therapy for a month and a half or two months, after which he said he felt better, although his back stiffens up about once a month or so, and he never saw Dr. Melamed again or sought any further medical care for the injuries he sustained in the accident. He missed four days of work following the accident.

Plaintiff Hiciano also was referred for a course of physical therapy. She missed between 10 days and three weeks of work following the accident.

In February 2000, Dr. Melamed referred both plaintiffs to Dr. Daniel J. Feuer for neurological evaluation. As to plaintiff Stevens, Dr. Feuer reported that the cervical spine was nontender, with no spasm, that there was "full" range of motion vertically and horizontally, that the lumbosacral spine showed mild bilateral paraspinal tenderness, but no spasm, and that straight leg raising was negative bilaterally. Dr. Feuer diagnosed lumbosacral sprain but, in view of his findings, advised "no further neurodiagnostic evaluation at this point in time."

As to plaintiff Hiciano, Dr. Feuer reported that she complained of headaches with mild dizziness and severe neck pain. Upon examination of her cervical spine, Dr. Feuer found restricted range of motion in the horizontal and vertical plane. He diagnosed cerebral concussion and cervical sprain and referred plaintiff for an MRI of the brain. The MRI conducted on March 6, 2000, was, according to the report, "[u]nremarkable." Plaintiff was examined on March 10, 2000 by Dr. Kenneth Falvo, an orthopedic surgeon, whose diagnosis was, "Cervical sprain,

resolved. Low back sprain, resolved." Dr. Falvo concluded, "No further causally related treatment, physical therapy, testing or follow up in my specialty is necessary for the neck and back."

In support of their motion for summary judgment with respect to plaintiff Stevens, defendants submitted, inter alia, not only Dr. Feuer's report but also the report of Dr. Andrew Ivanson, a neurologist, who examined Stevens in July 2003 and reported that his cervical spine revealed full range of motion in flexion, extension, right and left lateral bending and right and left rotation with no paraspinal muscle spasm or tenderness, that the lumbar spine revealed full active range of motion in flexion, extension and lateral flexion with no paraspinal muscle spasm or tenderness, and that straight leg raise testing was negative bilaterally. Dr. Ivanson concluded that plaintiff "has recovered from any injuries he may have sustained," that the injury to the lumbar spine was a sprain/strain-type injury and "certainly there will be no permanency as a result of this injury," and that "[d]espite his subjective complaints, there were no objective neurologic findings to substantiate them."

Defendants further submitted a report regarding Stevens by Dr. Robert J. Orlandi, an orthopedist who examined Stevens in January 2003. Dr. Orlandi reported full painless range of motion of the shoulders and scapulothoracic joints and, in the lumbar spine, "excellent forward flexion to 85 degrees and 30 degrees of extension," with lateral bend to the left and to the right of 30 degrees, and negative straight leg raising test, sitting and supine. Dr. Orlandi stated that an MRI of plaintiff's lumbar spine taken on October 8, 2002 was interpreted as showing mild pre-existent discogenic degenerative change at L5/S1 and lumbar straightening, and he concluded that the lumbar MRI scan is "unremarkable for any causally related abnormalities. There were no disc herniations, nerve root or foraminal impingement." Dr. Orlandi also stated that an MRI performed in December 1999 showed lumbar straightening and a bulging disc only at L5/S1, and, citing the New England Journal of Medicine, he observed that "[o]ne or more bulging lumbar discs are present in over 50% of the asymptomatic population." Dr. Orlandi's diagnosis was, "Lumbar strain resolved. Normal cervical spine examination." He stated that plaintiff's low back examination is "entirely normal," and that 85 degrees of forward flexion "in fact is likely 5 degrees more than one would expect for his age group." Dr. Orlandi concluded that his orthopedic examination "does not document the presence of permanent residuals or a musculoskeletal disability," there is no need for further orthopedic care, including physical therapy, and plaintiff "is capable

of a full level of activities of daily living and full work activities, without restriction."

As to plaintiff Hiciano, defendants again relied upon the reports of plaintiffs' experts rendered in 2000 and the report of an examination in May 2003 by Dr. Andrew Ivanson, who conducted a neurological evaluation and found that the cervical spine showed full range of motion in flexion, extension, right and left lateral bending and right and left rotation, with no paraspinal muscle spasm or tenderness, and that the lumbar spine showed full active range of motion in flexion, extension and lateral flexion, with no paraspinal muscle spasm, although there was a complaint of mild tenderness on palpation. Straight leg raise testing was negative bilaterally. Her cranial nerves, senses, reflexes, station and gait were all normal. Dr. Ivanson's impression was, "Cervical and lumbar sprain, resolved. History of migraine headaches. Normal neurologic examination." He stated that he believed plaintiff's injuries were causally related to the November 1999 accident, but that the migraine headaches were not causally related to the accident.

Further, Dr. Robert J. Orlandi conducted an orthopedic evaluation of plaintiff Hiciano in January 2003, and reported that his examination of her cervical spine and low back was "unremarkable." She had excellent range of motion in the cervical spine and both shoulders and scapulothoracic joints, and a "very minor restriction" of forward flexion to 75 degrees in the lumbar spine, which he observed was "not compatible" with the straight leg raising test, which was negative to 90 degrees, both seated and supine. Dr. Orlandi concluded that his examination "does not document the presence of permanent residuals or a musculoskeletal disability," that there was no need for further orthopedic care, including physical therapy, and that plaintiff "is capable of a full level of activities of daily living and full work activities, without restriction."

In response to defendants' evidentiary showing, plaintiffs submitted an affirmation of Dr. Melamed, who treated them after the November 1999 accident and next saw them again in May 2004 in connection with defendants' motion for summary judgment. Dr. Melamed concluded, "Both of their conditions persist as the inability to move their necks and lower backs to the full range of what is normal, continues and, with age, and the normal degenerative process attendant thereto, can only expect to worsen as a direct result, with a reasonable degree of medical certainty, causally related to this accident, they cannot fully use their necks and lower backs as a normal person could, and their conditions are therefore permanent. Definite signifi-

cant and permanent injuries to their cervical spines and lumbo-sacral spines, continue to this day and will naturally, with age worsen."

However, Dr. Melamed failed to provide "any foundation or objective medical basis" for his conclusion that plaintiffs were significantly and permanently injured as a result of the accident (*Franchini v Palmieri*, 1 NY3d 536, 537 [2003]). He stated, for example, that his affirmation was based upon a review of his January 2000 reports and his May 2004 chart notes and examinations of plaintiffs, but he neither attached the earlier reports to his affirmation nor described their contents, except to say, vaguely, that the reports "and history demonstrate marked restriction of motion of the cervical and lumbar spines and other injuries set forth therein." He also stated that his diagnoses of plaintiffs' conditions "all . . . correlate to the complaints that [they] relayed to me in the visits to my office and the complaints in [their] visit[s] on May 14 [and 15], 2004." But plaintiffs' subjective complaints are not sufficient to satisfy the statutory threshold (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350 [2002]).

While Dr. Melamed did set forth his objective measurements of the ranges of motion in plaintiffs' cervical and lumbar spines in 2004 (*id.*), he did not correlate these limitations in range of motion to any limitations in plaintiffs' activities. Morever, since, as indicated, he failed to set forth for comparison a numeric expression of the range of motion findings he may have made after the accident, the only evidence in the record of plaintiffs' ranges of motion between November 1999 and May 2004 is the reports of the physicians who evaluated them in those years, and these reports, the latest of which date from mid-2003, state that the ranges of motion were normal and that plaintiffs' accident-related conditions had "resolved" (*see Pommells v Perez*, 4 NY3d 566, 574 [2005]). Dr. Melamed also failed to explain the cessation of any treatment of plaintiffs for four years before he made his findings in 2004, and plaintiff Stevens himself testified that he felt better after his two months of physical therapy (*id.*). Concur—Tom, J.P., Andrias, Marlow, Ellerin and Sweeny, JJ.