## Maltaghati v Vargas

2024 NY Slip Op 33821(U)

October 24, 2024

Supreme Court, New York County

Docket Number: Index No. 152578/2018

Judge: James G. Clynes

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. JAMES G. CLYNES**      PART      **22M**

*Justice*

-----------------------------------------------------------------------X

PHILIP L. MALTAGHATI,

                Plaintiff,

           - v -

YGANCIO VARGAS AND AMD USA, INC.

             Defendant.

-----------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 152578/2018 |
| MOTION DATE | 04/10/2023 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 85, 86, 87

were read on this motion to/for      JUDGMENT - SUMMARY      .

Upon the foregoing documents and following oral argument it is ordered that the motion by defendants Ygnacio Vargas (Vargas) and AMD USA, Inc. (AMD) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing plaintiff Philip L. Maltaghati's (Maltaghati) complaint on the grounds that Maltaghati's alleged injuries fail to satisfy the serious injury threshold requirements of Insurance Law 5102(d) and 5104.

On July 8, 2017, Vargas, while in the course of his employment for AMD, drove a box truck, into the door of plaintiff's vehicle as plaintiff was exiting his vehicle on Northern Boulevard in Queens. Vargas testified at his deposition in this matter that he was involved in an accident on July 8, 2017 during which his vehicle came into contact with the door of plaintiff's parked vehicle (Arnold aff, exhibit 11 at 36). Plaintiff's complaint asserts one cause of action for negligence.

Plaintiff alleges in the bill of particulars that his injuries that resulted from the subject accident include a central herniation at L5-S1, a bulging disc at L3-4 with thecal sac indentation; a bulging disc at L4-5 with thecal sac impingement, temporo-mandibular joint disorder, restricted range of motion at lumbar spine and headaches. In the supplemental bill of particulars, plaintiff avers the following test: esophagogastroduodenoscopy with biopsy performed on August 27, 2018

152578/2018  MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO
Motion No. 002

Page 1 of 13

[* 1]

by Dr. Robert Brunner MD. Specifically, plaintiff alleges an "enlarged spleen due to trauma causing chronic acid reflux and abnormal bloating; "gastiritis in the prepyloric region of the stomach; " tenderness in epigastric region; inflammation in the stomach" (Hayes aff, exhibit F at 1). In his counterstatement of facts in opposition to defendants' motion, plaintiff states that as a result of this accident, he has suffered from, inter alia, headaches, low back pain and a decreased range of motion, as well as an enlarged spleen.

Defendants move for summary judgment on the grounds that plaintiff has not sustained a "serious injury" as defined by Section 5102(d) of the Insurance Law. Specifically, defendants argue that there is no evidence that plaintiff sustained a serious injury in any of the statutory categories, such as a permanent loss of use of a body organ, member, function, or system; permanent consequential limitation of use of body organ; significant limitation of use of a body function or system; or a "medically determined injury" or impairment of non-permanent nature which prevents an injured person from performing substantially all of the material acts which constitutes such person's usual and customary daily activities for not less than ninety (90) days during the 180 days immediately following the occurrence of the injury or impairment. In support of their motion, defendants offer medical reports based upon independent medical examinations of plaintiff.

In opposition, plaintiff argues that his treating physicians have determined, based upon objective medical tests and evaluations, that plaintiff has suffered a decreased range of motion and an enlarged spleen, both of which are the type of injury that constitutes a significant injury under applicable law and that both resulted from the July 8, 2017 accident.

Section 5104(a) of the Insurance law of the State of New York provides for the following:

"Notwithstanding any other law, in an action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss."
Serious injury is defined in Section 5102(d) of the Insurance Law as follows:
"'Serious injury' is statutorily defined as: a personal injury which results in death; dismemberment; significant disfigurement; fracture; loss of fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a

**152578/2018  MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO**
**Motion No. 002**

**Page 2 of 13**

2 of 13

body organ, significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured from substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety (90) days during the one hundred eighty (180) days immediately following the occurrence of the injury of impairment."

The question of whether a plaintiff has suffered a "serious injury" within the meaning of Section 5102(d) is one of law that is appropriately addressed by a summary judgment motion (*Licari v Elliot*, 57 NY2d 230, 237 [1982] [the issue of whether plaintiff has made a prima facie showing of "serious injury" is one of law to be decided by the Courts in the first instance]).

If a defendant's motion is sufficient to raise the issue of whether a "serious injury" has been sustained, in order to successfully oppose a motion for summary judgment, a plaintiff bringing a claim under the Insurance Law must set forth competent medical evidence based upon objective medical findings and diagnostic tests to support the claim (*Stevens v Homiak Transport Inc.*, 21 AD3d 300 [1st Dept 2005]; Subjective complaints of pain absent other proof are insufficient to establish a serious injury (*id.*).

A plaintiff who seeks to establish a serious injury under the permanent loss category of the statute, a plaintiff must produce competent medical evidence that there is a loss of use that is permanent (*Gaddy v Eyler*, 79 NY2d 955, 957 [1992]). It is an absolute requirement that the loss of use be permanent and total, must submit medical evidence to show that the purported loss of use has endured, without improvement from the time of the accident to the present (*Paradis v Burlarley*, 3 AD3d 718, 719 [3d Dept 2004]).

Likewise, in order to establish a "permanent consequential limitation of use of a body organ or member" under the seventh category of "serious injury" specified in Section 5102(d) of the Statute, plaintiff must submit objective medical evidence demonstrating that the purported limitation is important, significant or of some consequence, as well as permanent (*Palmer v Moulton*, 16 AD3d 933, 935 [3d Dept 2005]["as to plaintiffs' claims concerning the permanent consequential and significant limitation categories of Insurance Law 5102 (d), it is beyond cavil

152578/2018 MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO
Motion No. 002

Page 3 of 13

[* 3]

that a plaintiff [is] required to show more than a mild, minor or slight limitation of use" [internal quotation marks and citations omitted]).

An injury that satisfies the statutory category of "significant limitation of use of a body function or system" is characterized as a limitation that is more than "minor, mild or slight," (*Licari v. Elliot*, 57 NY2d at 236 "Whether a limitation of use or function is 'significant' or 'consequential' (i.e., important ...) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part" (*Downie v McDonough*, 117 AD3d 1401, 1403 [4th Dept 2014][internal quotation marks and citation omitted]).

The mere existence of a herniated disc does not constitute a serious injury, per se, under this or any other category of serious injury (*Pommells v Perez*, 4 NY3d 566, 574 [2005]). Instead, the medical records must additionally establish **recent** and **quantified** range of motion limitations and **permanency**:

> "Although the MRI report of plaintiff's radiologist is unaffirmed, it is undisputed that the MRI film showed a **disc bulge** and **herniation** at the L5–S1 level. The affirmation of plaintiff's orthopedist showing recent quantified range of motion limitations, positive tests, and permanency provided the requisite proof of limitations and duration of the disc injuries. The orthopedist's affirmation also raised a triable issue as to causation by addressing and disputing the opinion of defendant's radiologist of a degenerative condition, and opining that the disc pathology at the L4–L5 and L5–S1 levels was traumatic in origin"

(*Pietropinto v Benjamin*, 104 AD3d 617, 617-618 [1st Dept 2013] [internal citations omitted]).

Likewise in *Moreira v Mahabir*, the First Department noted that the medical reports indicated significant limitations in range of motion that were recent and, therefore, plaintiff was able to sustain her burden in opposition to defendant's motion:

> "plaintiff raised an issue of fact through the affirmed reports of a physician who examined her soon after the accident, and another who examined her recently and observed significant limitations in range of motion of the affected body parts, as well as positive results on objective tests for cervical and lumbar injury"

(*Moreira v Mahabir*, 158 AD3d 518, 518-519 [1st Dept 2018]; *see also Encarnacion v Castillo*, 146 AD3d 600, 601[1st Dept 2017] [plaintiff's physician's report indicated "continuing limitations in range of motion and objective indications of injury to her cervical and lumbar spine, and opined that the injuries were causally related to the accident and permanent in nature"]).

152578/2018 MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO
Motion No. 002

Page 4 of 13

[* 4]

Additionally, subjective complaints of pain or headaches is not enough to establish a serious injury (*Downie*, 117 at 1403). In addition to an objective basis for plaintiff's complaints of pain, in order to establish threshold proof of a serious injury, a plaintiff must offer "proof that [his] headaches in any way incapacitated [him] or interfered with [his] ability to work or engage in activities at home" (*Licari*, 57 NY2d at 239).

In support of their motion for summary judgment, defendants rely upon the affirmed independent report of a neurologist, Robert S. April, M.D. (Hayes aff, exhibit I), who examined plaintiff on December 11, 2019. In his report, Dr. April concludes with reasonable medical certainty that: "the accident of record did not produce a neurological diagnosis, disability, limitation or need for further diagnostic testing. There was no causal relationship to the accident of record. His current medical condition is subjective back pain without need for household help, transportation or medical supplies" (*id.*, exhibit I at 6).

Dr. April's range of motion tests on plaintiff's lumbar spine indicated limited range of motion: Flexion: (normal: 60 degrees) (plaintiff: 0 degrees); Extension: (normal: 25 degrees)(plaintiff: 0 degrees); Right Lateral Bending (normal: 25 degrees) (plaintiff: 0 degrees) Left Lateral Bending (normal: 25 degrees) (plaintiff: 0 degrees). However, as to this limitation, Dr. April observed: "The inconsistency of his not being able to bend at all from standing but the ability to sit up to 90° as well as bending forward while sitting to put on and take off his shoes and socks, mitigates against lumbar radiculopathy and indicates exaggerated, voluntary limitation of lumbar range of motion" (*id.*, exhibit I at 5-6). All other range of motion tests performed by Dr. April on plaintiff indicated normal range.

Dr. April also found that: "This 36-year-old male had a normal neurological examination today and a great number of well-described subjective complaints, none of which correlated with any objective evidence of injury to the lumbar spine or any other part of the body" (*id.*, exhibit I at 5).

Defendants also rely upon the affirmed independent report of orthopedist Richard D. Semble, M.D. who examined plaintiff on August 20, 2019, and found that plaintiff had resolved

**152578/2018 MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO**
**Motion No. 002**

**Page 5 of 13**

5 of 13

lumbar spine sprain/strain and resolved right knee sprain/strain. He concluded that within a reasonable degree of medical certainty, there is no objective evidence of an orthopedic disability.

Dr. Semble completed range of motion measurements with respect to plaintiff's lumbar spine and produced the following results:

> Lumbar Spine: There is no muscle spasm upon palpation of the paralumbar muscles. There is complaint of mild tenderness upon palpation of the paralumbar muscles. Range of motion reveals flexion to 40 degrees (60 degrees normal), extension to 25 degrees (25 degrees normal), and right lateral bending to 25 degrees (25 degrees normal) and left lateral bending to 25 degrees (25 degrees normal). He has complaints of pain with flexion.

(Hayes aff, exhibit J at 3).

Despite the limited range of motion for plaintiff's flexion, Dr. Semble concludes: "[b]ased on today's examination and within a reasonable degree of medical certainty, there is no objective evidence of an orthopaedic disability. Some subjective restrictions of motion in the resolved body parts were not supported by objective clinical findings of today's examination (id., exhibit J at 4). Yet, Dr. Semble states that there is a causal relationship between the accident of record and Mr. Maltaghati's diagnosed injuries (id., exhibit J at 4).

Further, defendants offer the report of Dr. Jeffrey Warhit, a radiologist, who examined plaintiff's December 22, 2017 MRI on September 11, 2019 and concluded: "Degenerative changes at the L3-S1 levels. In view of the associated degenerative changes, the mild disc bulging at the L3-L5 levels and the disc herniation at the L5-S1 level appear degenerative. There is no evidence of a traumatic injury to the lumbar spine" (Hayes aff, exhibit K at 1).

Finally, defendants rely upon the report of Ira Daniel Breite, a gastroenterologist, who examined plaintiff on July 15, 2022. Concerning plaintiff's medical history, Dr. Breite notes that plaintiff's primary care physician, Dr. Musso, noted on July 23, 2018 that the claimant was "'complaining of stomach pain, thinks it might be kidney or gallbladder stones', his abdominal exam was normal. Dr. Musso had noted right upper quadrant pain for 2 weeks and sent plaintiff for an abdominal sonogram, which revealed borderline splenomegaly" (Hayes aff, exhibit L at 4). Dr. Breite observed that after plaintiff was seen by Dr. Brunner on August 16, 2018, plaintiff did not seek any further follow up with respect to his gastroenterological issues, and Dr. Breite

152578/2018 MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO
Motion No. 002

Page 6 of 13

[* 6]

indicated that at the time of his examination of plaintiff, plaintiff was not taking any medications. According to Dr. Breite's independent examination and his review of plaintiff's records, he concluded that with respect to plaintiff's gastrointestinal complaints, not one of them is related to trauma: "Splenomegaly is usually a result of medical problems with the liver or hematologic system, such as cirrhosis or hematologic malignancies. It can also be caused by infection or infiltrative disease like sarcoidosis. It is not related to trauma" (Hayes aff, exhibit L at 5). He concluded his report by stating: "The complaints are minor and the imaging, laboratory and endoscopy results that I reviewed are not worrisome. These symptoms do not indicate deeper underlying pathology or trauma" (*id.*).

The court finds that based upon these independent medical reports, defendants initially establish their prima facie showing that plaintiff's alleged injuries do not satisfy the serious injury threshold (*see Pommells v Perez*, 4 NY3d at 574). The burden now shifts to plaintiff to present objective medical proof of a serious injury causally related to the accident in order to survive summary dismissal (*id.*).

In his opposition to defendants' motion, and in support of his claim of serious injury, plaintiff highlights the results of the "objective tests" conducted by Dr. April, which "expressly state that Plaintiff had 0 range of motion in his lumbar spine, and Dr. April himself noted Plaintiff's 'inability to bend or move from the back'" (memo in opp at 7). Plaintiff additionally notes that Dr. Semble observed during his independent examination of plaintiff that a normal range of motion for flexion extends from 0-60 degrees and that plaintiff was only able to bend from 0-40 degrees, and that the Plaintiff complained of pain while engaging in flexion activities (memo in opp at 8).

Further, plaintiff relies upon the records of his treating physician, Dr. Aric Hausknecht, as well as a January 1, 2018 lumbar MRI of plaintiff's spine, and a January 16, 2018 EMG. Plaintiff takes the position that as a result of the accident, his medical records show that he suffered from a reduced range of motion, a central herniation L5-S1 with thecal sac indentation and impingement upon S1 roots as well as bulging at L3-L4 and L4-L5, and radiculopathy at L5-S1.

152578/2018  MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO
Motion No. 002

Page 7 of 13

According to Dr. Hausknecht's December 14, 2017 examination of plaintiff, plaintiff suffered lumbosacral derangement, including a decreased range of motion in forward flexion from a normal range of motion of 0-90 to a limited range of motion from 0-78, as well as similar reductions in spinal extension and both left and right lateral spinal flexion (Arnold aff in opp, exhibit 4 at 9). Dr. Hausknecht states that the cause of plaintiff's back injury is the subject accident. Plaintiff argues that after a five-month course of treatment, Dr. Hausknecht further concluded that Plaintiff's pain and physical condition was unlikely to improve with further physical therapy or chiropractic treatments (Arnold aff in opp, exhibit 4 at 3-9).

During plaintiff's most recent visit to Dr. Hausknecht on April 19, 2018, Dr. Hausknecht described plaintiff's condition as follows: "There is paralumber [sic] muscular spasm. There is pain with lumbar extension. Straight leg raise testing is negative. There is moderate restriction of mobility in the lumbosacral spine. Motor strength is grossly intact proximally and distally in the lower extremities" (id., exhibit 4 at 3). At the beginning of this April 19, 2018 report, Dr. Hausknecht notes plaintiff's failure to engage in treatment with respect to his complaints concerning his lumbar spine: "The patient has been busy at work. He has not been going for therapy. He takes Advil as needed for pain. He has been doing some home exercises. He did not make an appointment for epidural steroid injections" (id at ).

Unlike his examination of December 14, 2017, Dr. Hausknecht does not refer to any objective range of motion tests or results in connection with this examination. With respect to permanency, Dr. Hausknecht states: "I have instructed Mr. Maltaghati on stretching and strengthening exercises at home for his lower back. It is unlikely that he will derive much benefit from any further physical therapy and chiropractic treatments" (id., exhibit 4 at 3) and "[w]ith a reasonable degree of medical certainty, his condition is causally related to the motor vehicle accident that occurred on 7/8/17. He is partially disabled and I have advised him to restrict his activities. Prognosis is guarded" (id., exhibit 4 at 4).

With respect to the injuries resulting from plaintiff's previous car accident, in which his car hit a pothole, Dr. Hausknecht concludes that those injuries have resolved: "He was involved in

152578/2018 MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO
Motion No. 002

Page 8 of 13

8 of 13

[* 8]

a prior motor vehicle accident approximately 10 years ago when he struck an open manhole while driving. He received some treatment for his lower back and made a good recovery" (Arnold aff in opp, exhibit 4 at 7).

With respect to his lumbar spine injuries, the court finds that plaintiff has not met his burden to create a question of fact as to whether his injuries meet the threshold test for serious injury in the categories of a permanent loss of use of a body organ, member, function, or system; permanent consequential limitation of use of body organ; or a "medically determined injury" or impairment of non-permanent nature which prevents an injured person from performing substantially all of the material acts which constitutes such person's usual and customary daily activities for not less than ninety (90) days during the 180 days immediately following the occurrence of the injury or impairment. Although it is without question that a lumbar MRI of plaintiff's spine on January 1, 2018, showed that plaintiff had central herniation L5-S1 with thecal sac indentation and impingement upon S1 roots, as well as bulging at L3-L4 and L4-L5, this finding is not enough to establish that plaintiff's injuries were permanent under the Insurance Law (*see Pommells*, 4 NY3d at 575). The plaintiff is still required to provide objective evidence of the extent or degree of physical limitations resulting from such injuries and their duration (*Descovich v Blieka*, 279 AD2d 499, 500 [2d Dept 2001]). Not one of the medical practitioners that evaluated plaintiff, treating or independent, state that plaintiff's injuries are permanent or that they significantly limited his activities during the first 180 days after the subject accident. Injuries that are "mild, minor or slight" are not enough to establish a serious injury (*Licari*, 57 NY2d at 236).

Here, Dr. April's range of motion measurements indicated limited range of motion with respect to plaintiff's lumbar spine, however, Dr. April's observations of plaintiff's bending to put on his shoes and socks undermine those results. Furthermore, the range of motion measured by Dr. Semble indicated a limited range of motion, i.e., plaintiff's flexion measured 40 degrees, where normal is 60 degrees, may be enough to establish a significant limitation of use of a body function or system, but not permanency (*see Stevens*, 21 AD3d at 304 [The First Department found:

152578/2018 MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO
Motion No. 002

Page 9 of 13

"[w]hile Dr. Melamed did set forth his objective measurements of the ranges of motion in plaintiffs' cervical and lumbar spines in 2004, he did not correlate these limitations in range of motion to any limitations in plaintiffs' activities" [internal citation omitted]). Neither Dr. April nor Dr. Semble state that these injuries are permanent.

In his opposition papers, plaintiff does not expressly state that his injuries are permanent. He states of his back injuries: "it is beyond reasonable dispute that Plaintiff's treating physician conducted physical exams of Plaintiff resulting in a determination that Plaintiff suffered from a reduced range of motion as a result of the Accident" (memo in opp at 10). For this proposition, plaintiff cites to Dr. Hausknecht's statement that it is unlikely that plaintiff will benefit from further physical therapy and chiropractic treatments, which also does not state that plaintiff's back injuries are permanent. In fact, the complete statement by Dr. Hausknecht included the statement: "I have instructed Mr. Maltaghati on stretching and strengthening exercises at home for his lower back. It is unlikely that he will derive much benefit from any further physical therapy and chiropractic treatments" (Hayes aff, exhibit I at 3). Based upon these statements by Dr. Hausknecht and upon the entire record, it is impossible for the court to conclude that plaintiff's injuries are of a permanent nature and find that plaintiff's injuries do not satisfy the two categories, permanent loss of use of a body organ, member, function, or system or permanent consequential limitation of use of body organ, of serious injury.

However, the medical records support a question of fact as to whether plaintiff suffered a significant limitation of any of his body functions or systems. Plaintiff's January 1, 2018 MRI indicates that plaintiff had central herniation L5-S1 with thecal sac indentation and impingement upon S1 roots, as well as bulging at L3-L4 and L4-L5,and additionally there are the objective measurements performed by Drs. April, Semble and Hausknecht indicating a limitation of range of motion in plaintiff's lumbar spine which demonstrate the existence of a factual question about plaintiff's serious injury (see *Wenegieme v Harriott*, 157 AD3d 412, 412 [1st Dept 2018]).

According to Dr. April's testing calculations during his December 11, 2019 examination of plaintiff, plaintiff has limited range of motion in his lumbar spine. Although Dr. April states

152578/2018  MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO
Motion No. 002

Page 10 of 13

that his observations of plaintiff's bending to put on his shoes and socks undermine the objectivity of these numbers, the court finds that this discrepancy creates a question as to the significance of plaintiff's injury. Likewise, Dr. Semble's limited range of motion calculations during his August 20, 2019 examination of plaintiff create a question about the significance of plaintiff's injuries. Further, Dr. Semble attributes plaintiff's injuries to the subject accident. Finally, Dr. Hausknecht's range of motion calculations during his December 14, 2017 examination of plaintiff, also establish that plaintiff has limited range of motion in his lumbar region and Dr. Hausknecht also attributed plaintiff's lumbar injuries to the subject accident. The fact that Dr. Hausknecht did not perform any range of motion tests on plaintiff during his last examination of plaintiff on April 19, 2018, raises questions for the court, but does not mandate a finding that plaintiff is categorically unable to meet his burden and create a question of fact with respect to his proof under Insurance Law Sec. 5102.

On July 24, 2017, two weeks after the accident, plaintiff was examined by Dr. Glen Loria. At the time, plaintiff was complaining of headaches. His complaints were memorialized in the doctor's report as follows:

> "fullness of the head & tightness in the temple, frontal & bitemporal regions. Patient complains of tightness & spasm of the face when opening mouth, complains of discomfort in the right ear as if ears are clogged, patient claims that approx 2 weeks ago while he was getting out of his car, the door of his car was accidentally struck by a truck which was trying to park, patient claims that the above [symptoms] started after that incident"

(Arnold aff in opp, exhibit 1 at 1).

Dr. Loria found that plaintiff's complaints about his head were consistent with "tempero mandibular joint disorder" and referred him to a dentist (id., exhibit 1 at 2). Other than noting that plaintiff "claims" that the symptoms began after the subject accident, Dr. Loria does not make any finding that this condition was in any way related to the subject accident. Furthermore, the scant records from Dr. Isaac Seinuck, DDS do not contain any information concerning a connection between plaintiff's diagnosis of tempero mandibular joint disorder and the accident.

Pursuant to an abdominal ultrasound on July 25, 2018, Dr. Brunner does not link any observations of plaintiff's spleen with the subject accident. Dr. Brunner wrote in his report:

152578/2018 MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO
Motion No. 002

Page 11 of 13

11 of 13

"borderline splenic enlargement. Although somewhat prominent, and the visualized splenic parenchyma has a homogeneous echo pattern. Follow up is suggested clinically warranted" (id., exhibit 9 at 22). In his report based upon his August 27, 2018 examination of plaintiff, Dr. Brunner does not mention the subject accident, nor does he relate any of his findings to the accident or to trauma of any kind.

Finally, Section 5102 (d) of the Insurance Law requires:

"a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

Defendants have also met their burden with respect to plaintiff's 90/180-day claim by submitting plaintiff's deposition testimony showing that the injuries did not prevent plaintiff from returning to work and otherwise affecting his usual pre-accident activities. Plaintiff testified on page 97 of his deposition, that he did not miss any time from work as a result of the accident:

"Q. Did you miss any time from work because of the accident?

A. No"

In *Bailey v Islam* (99 AD3d 633 [1ˢᵗ Dept 2012]), the Court found no merit to plaintiff's claim of a serious injury under the 90/180 day category where the plaintiff offered "no evidence showing that he was restricted from performing substantially all of the material acts that constituted his usual and customary daily activities for 90 days during the 180 days following the accident" (*Bailey*, 99 AD3d at 634 [*see also DaCosta v Gibbs*, 139 AD3d 487, 488 [1ˢᵗ Dept 2016]["Plaintiff's testimony indicating that she missed less than 90 days of work in the 180 days immediately following the accident and otherwise worked 'light duty' is fatal to her 90/180-day claim"]).

Here, there is no medical proof, nor is there testimony, memorialized in either a deposition or an affidavit from plaintiff, that plaintiff was unable to perform substantially all his daily tasks for 90 of the first 180 days due to an injury or impairment caused by the accident. The court

152578/2018  MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO
Motion No. 002

Page 12 of 13

therefore finds plaintiff is unable to sustain a claim under this statutory category. Accordingly, it is

ORDERED that defendants' motion is denied with respect to the serious injury category of significant limitation of a body function or system in relation to plaintiff's lumbar spine injuries only and granted in part with respect to plaintiff's serious injury claims in relation to every other statutory category which are hereby dismissed; and it is further

ORDERED that within 30 days of entry, Plaintiffs shall serve a copy of this Decision and Order upon defendants with Notice of Entry.

This constitutes the Decision and Order of the Court.

10/24/2024
DATE

JAMES G. CLYNES, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

152578/2018  MALTAGHATI, PHILIP L. vs. VARGAS AND AMD USA, YGANCIO
Motion No. 002

Page 13 of 13

13 of 13