Milek v DPM Contr. Servs., Inc. (2025 NY Slip Op 50414(U))

[*1]

Milek v DPM Contr. Servs., Inc.

2025 NY Slip Op 50414(U)

Decided on March 24, 2025

Supreme Court, Richmond County

DiDomenico, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 24, 2025
Supreme Court, Richmond County

Dawid Milek, Plaintiff

against
DPM Contracting Services, Inc. and JOSE MENDEZ, Defendants.

Index No. 150298/2023

Plaintiff is represented by: 
Ryan Boisvert Charder Esq. 
Cohen & Cohen Personal Injury Lawyers 
104-70 Queens Blvd., Suite 312
Forest Hills, NY 11375 
718-275-7779 
Defendant is represented by 
Deborah Zachary Esq. 
Zachary & Zachary, P.C. 
75 Little Clove Rd
Staten Island, NY 10301 
718-442-2828

Catherine M. DiDomenico, J.

Recitation as required by CPLR 2219(a) of the papers considered in the review of Motion Sequence Numbers 001 & 002
Document                
Numbered
Notice of Motion by Plaintiff (001) 1
Notice of Cross Motion (002) by Defendant 2
Opposition to 002 by Plaintiff 3
Reply Affirmation in further support of 002 by Defendant 4
Conditional Order of Preclusion 5
Plaintiff's Verified Bill of Particulars 6
Transcript of Oral Argument dated 9/26/24 7
Upon the foregoing cited papers, the Decision and Order is as follows:
 Procedural History / Present Motions
The present personal injury action was commenced with the filing of a Summons and Complaint on February 14, 2023. The case relates to a motor vehicle accident which occurred on November 8, 2022, in Staten Island, New York. Plaintiff claims that as a result of this accident [*2]he sustained serious injuries to his cervical, thoracic and lumbar spine, and a tendon tear in his left shoulder. Before the completion of discovery, but after Plaintiff's deposition and Independent Medical Examination ("IME") were held, both parties cross moved for summary judgment.
By Notice of Motion dated March 19, 2024 (Seq. No. 001) Plaintiff seeks an order granting him summary judgment on the issue of liability. Plaintiff also seeks an order precluding Defendants from offering any evidence at trial on the issue of liability, as they failed to appear for depositions. On May 22, 2024, Defendants cross-moved (Seq. No. 002) for an order granting them summary judgment on the damages issue of whether Plaintiff sustained a "serious injury" as defined by Section 5102(d) of the Insurance Law. 
Motions 001 and 002 were argued on August 16, 2024. However, only Plaintiff's request for discovery sanctions was addressed on that date. Plaintiff's discovery motion was conditionally granted, and Defendants were afforded a final opportunity to be deposed, or they would be precluded from testifying at trial. The conditional preclusion order was self-executing, and the balance of the motions seeking summary judgment were adjourned to September 26, 2024. 
On September 26, 2024, both parties' motions for summary judgment were argued and submitted for decision. During oral argument it was established that Defendants had not appeared for their depositions and thus were precluded from contesting the issue of liability. Moreover, Defendant's counsel admitted that absent participation from her clients, she had "no facts" with which to oppose Plaintiff's motion. Plaintiff met his initial burden to establish his entitlement to summary judgment by offering admissible proof that he was proceeding straight through an intersection when Defendant Mendez made an unsafe left turn into his path of travel. See VTL §§1163(a); 1141. In the absence of opposition, Plaintiff's motion for summary judgment on the issue of liability is hereby granted. See Morante v. Blaney, 2025 NY Slip Op 00086 (2d Dept. 2025). This leaves only Defendant's motion for summary judgment on the issue of whether Plaintiff meets the serious injury threshold. 

Defendants' Motion for Summary Judgment
Defendants, DPM Contracting Services, Inc. and Jose Mendez, move by Notice of Motion (Seq. No. 002) for an order granting them summary judgment on the issue of whether Plaintiff, Dawid Milek, sustained a "serious injury" as defined by Section 5102(d) of the Insurance Law. Defendants have submitted a copy of Plaintiff's deposition testimony to establish the facts surrounding the accident and its aftermath. In addition, Defendants have provided a copy of an IME Report prepared by their expert witness Dr. Arnold T. Berman M.D., a board-certified orthopedic surgeon. Defendants have also provided a copy of a MRI film review conducted by a board-certified radiologist, Dr. Audrey L. Eisenstadt, M.D.
Dr. Berman's report details the medical treatment received by Plaintiff related to this accident and lists the medical records he reviewed to obtain this information. Dr. Berman conducted a physical examination of Plaintiff on December 26, 2023. As set forth at length in his report, Dr. Berman concluded that any injuries that were related to the present accident were "resolved." He further observed that Plaintiff exhibited a full range of motion in all relevant areas upon testing. In relation to Plaintiff's alleged spinal injuries, Dr. Berman admits the presence of a "signal abnormality" in his MRI but claims that the condition was chronic, pre-[*3]existing and could not have been caused by this single motor vehicle accident. As for Plaintiff's alleged shoulder injury, Dr. Berman opined that there were no objective findings of an ongoing condition upon examination and that any injury that occurred has since resolved. He found no causal relationship between the shoulder injury and any of Plaintiff's complaints of pain at the time of examination. Finally, Dr. Berman opined that Plaintiff did not require orthopedic treatment of any sort.
In addition to Dr. Berman's report, Defendant relies upon the expert opinion of Dr. Audrey Eisenstadt M.D., a board-certified radiologist, who reviewed Plaintiff's MRI films. In her report, Dr. Eisenstadt indicated that she first reviewed an MRI of Plaintiff's cervical spine taken sixteen days after the accident on November 8, 2022. Dr. Eisenstadt opined that the condition in Plaintiff's cervical spine did not constitute a bulge or herniation and that the signal change at the C4-5 level was "degenerative" in nature and had likely developed over a period of at least six months before the date of accident. Dr. Eisenstadt concluded that she found no causation associated with the condition in Plaintiff's neck and any traumatic injury. As for Plaintiff's left shoulder, Dr. Eisenstadt reviewed an MRI that was taken approximately twelve weeks after the accident. This MRI showed evidence of a "small partial tear of the distal supraspinatus tendon." While less conclusive than her findings regarding Plaintiff's spine, Dr. Eisenstadt opined that she did not see any "active inflammation" or other evidence of "recent trauma" in the imaging. 
Along with their expert reports, Defendants also offer a transcript of Plaintiff's deposition testimony together with a copy of his post-accident hospital record from Richmond University Medical Center. Defendants argue that the hospital record, which is contemporaneous with the date of accident, reveals that Plaintiff only complained of a headache, without reference to any pain in the shoulder or neck. Defendants further argue that Plaintiff's deposition testimony is contradictory to his claims in this case as he was able to return to work the day after the accident. Defendants argue that Plaintiff sought very little treatment for his alleged injuries. Plaintiff testified that he saw an unidentified doctor, of unknown specialty, three times and treated with a chiropractor and acupuncturist for a few months following the accident. He stopped treatment after a few months because his "condition improved," he was "feeling better" and "he believed" that physical therapy would offer no further benefit. There is no indication that a medical expert informed him that he had reached his "maximum medical improvement." Plaintiff testified that the entirety of his medical treatment related to this accident was conducted at a single facility recommended by his attorneys in Staten Island (Tr. 9/22/23, p. 28).[FN1]

Plaintiff has submitted written opposition to Defendants' motion annexing uncertified copies of his medical records, together with an Affirmation from Dr. Yvette Davidov M.D., his treating physician. Dr. Davidov affirms that she is licensed to practice in New York but fails to indicate the nature of her practice or state her qualifications. Dr. Davidov's Affirmation fails to indicate her specialty, if any, and her curriculum vitae has not been annexed.[FN2]
Moreover, while [*4]she claims to have treated Plaintiff, only one treatment record has been provided, a three-page document dated July 3, 2024. While this medical record is not certified, Dr. Davidov's Affirmation contains legal argument that it should be admissible as a business record. On July 3, 2024, Dr. Davidov performed a physical examination of Plaintiff in response to the present motion. Notably, the medical record fails to explain how the examination was conducted and contains no indication that Dr. Davidov reviewed Plaintiff's MRI films, or any other medical records in preparation.
In her Affirmation, Dr. Davidov opined that Plaintiff sustained serious and permanent injuries to his cervical spine resulting in "disc bulges at C3-4, C4-5, C5-6, C6-7." She further found that he sustained a "left shoulder tear to the supraspinatus tendon, infraspinatus tendon, and superior glenoid labrum." During her physical examination, Dr. Davidov observed that Plaintiff exhibited range of motion deficits in his left shoulder, cervical spine and lumbar spine.[FN3]
Dr. Davidov concluded that the observed limitations were causally related to the motor vehicle accident at issue. However, Dr. Davidov addressed causation absent any discussion of degeneration to counter conclusions of Dr. Berman and Dr. Eisenstadt. She also fails to address Defendants' claim that Plaintiff's alleged conditions may have resulted from a prior incident where Plaintiff fell off a ladder ten years before the accident at issue. 
While the sole medical record attributed to Dr. Davidov does not explain how range of motion testing was conducted, her Affirmation indicates that she performed the testing with a goniometer and observed range of motion deficits ranging from 12% to 23%. However, her Affirmation fails to explain how she determined what a "normal" range of motion was. In contrast, Dr. Berman's report clearly indicates that his definition of "normal" was derived from the AMA's "Guidelines to the Evaluation of Permanent Impairment, Fifth Edition." Notably, the "normal range" proffered by Dr. Berman is different from the normal range identified by Dr. Davidov. Moreover, the examination conducted by Dr. Berman was considerably more extensive than that conducted by Dr. Davidov. For example, when examining Plaintiff's shoulder, Dr. Berman measured his "forward flexion, extension, abduction, adduction, internal rotation, and external rotation" and noted the absence of "heat, swelling, tenderness, clicking, erythema, or effusion." In contrast, Dr Davidov only measured Plaintiff's "flexion and abduction" and made no observation as to additional indicia of injury. 
Finally, while Dr. Berman's report includes a detailed list of medical and legal documents that he reviewed before examining Plaintiff, neither Dr. Davidov's Affirmation, nor her single medical record, indicate that she reviewed any of Plaintiff's medical records, MRI films [FN4]
, or his deposition testimony. As such, she was seemingly unaware of Plaintiff's testimony that he stopped treatment after two months because he was feeling better, and didn't feel that additional treatment would help. Dr. Davidov contradicts Plaintiff's testimony and suggests that he stopped treatment because his no-fault benefits were terminated.

Applicable Law
The proponent of a summary judgment motion has the initial burden of making a prima facie showing of entitlement to judgment as a matter of law by tendering sufficient evidence to eliminate any material issues of fact from the case. See Otty Cab Corp. v. Nazir, 72 N.Y.S.3d 517 (2d Dept. 2017). A movant's burden can be satisfied by the submission of sworn affidavits or deposition testimony in proper evidentiary form. See Charlie Fox, Inc. v. Diallo, 48 N.Y.S.3d 264 (2d Dept. 2016). While the general rule is that medical records relied upon when seeking summary judgment must be certified, "a defendant may rely upon unsworn . . . and uncertified records of a plaintiff's treating medical care provider in order to demonstrate the lack of serious injury." Elshaarawy v. U-Haul Co. of Miss., 72 AD3d 878 (2d Dept. 2010). When seeking summary judgment pursuant to Insurance Law §5102(d) the moving defendant must conclusively establish that the plaintiff did not suffer any of the enumerated "serious injuries" set forth in that statute and claimed by the plaintiff to meet their initial burden. See Cortez v. Bray, 192 AD3d 451 (1st Dept. 2021).
Once a prima facie showing of entitlement to summary judgment has been established, the burden shifts to the non-moving party to raise a material issue of fact. See Ubillus-Tambini v. Ischakov, 36 N.Y.S.3d 410 (2d Dept. 2016). A plaintiff opposing a "threshold" motion bears the burden of offering objective evidence sufficient to raise a question of fact as to whether they suffered a serious injury. See Stevens v. Homiak Transp., Inc., 21 AD3d 300 (1st Dept. 2005). If medical records are offered to meet a plaintiff's burden, they must be properly sworn to or certified. See Little v. Locoh, 71 AD3d 837 (2d Dept. 2010); see also Green v. Domino's Pizza, LLC, 140 AD3d 546 (1st Dept. 2016). A plaintiff is also required to explain any significant gaps in, or a cessation of, treatment. See Pommells v. Perez, 4 NY3d 566 (2005). Finally, an examining or treating physician is required to distinguish any showing on the part of the moving defendant that the claimed injuries pre-existed the accident at issue or were degenerative in nature. See Nieves v. Michael, 73 AD3d 716 (2d Dept. 2010). A physician examining a plaintiff in support of, or in opposition to, a threshold motion is required to set forth in sufficient detail the objective testing they performed and the medical records they reviewed before rendering their opinion. See Knopf v. Sinetar, 69 AD3d 809 (2d Dept. 2010). Absent a documented medical record review, conclusions as to causation become speculative. See Vidor v. Davila, 37 AD3d 826 (2d Dept. 2007).

Decision
Defendants have met their initial burden of establishing their entitlement to summary judgment as a matter of law by showing that Plaintiff exhibited a normal range of motion during his IME. See Toure v. Avis Rent a Car Sys., 98 NY2d 345 (2002); see also Cano v. U-Haul Co. of Ariz., 178 AD3d 409 (1st Dept. 2019). Defendants' expert witness, Dr. Berman, indicates that Plaintiff was tested using a handheld goniometer and that his range of motion in relation to all allegedly injured body parts fell within normal limits, in fact he exhibited a full range of motion. Dr. Berman cites to the American Medical Association's "Guides to the Evaluation of Permanent Impairment, 5th Edition," as his source of what constitutes a "normal" range of motion.
In addition to the findings of his physical examination, Dr. Berman properly indicates the legal documents and medical records that he reviewed in preparation of his report. Dr. Berman [*5]concludes that any conditions suffered by Plaintiff in relation to his cervical spine are chronic in nature, with no evidence of acute or traumatic injury. He finds that Plaintiff's alleged injuries could not have been caused by a single motor vehicle accident. He further concludes that Plaintiff's subjective complaints of pain are not supported by any objective findings, that he has no loss of body function, and that as he presents without orthopedic injury that would require medical treatment. Dr. Berman further opines that if Plaintiff suffered an injury to his shoulder from the accident at issue, it was a tear that has since fully resolved. The mere existence of a herniated disc, or a tendon tear, are not evidence of serious injuries in the absence of objective evidence of physical limitations resulting from those conditions and their duration. See Choi Ping Wong v. Innocent, 54 AD3d 384 (2d Dept. 2008); see also Kearse v. New York City Tr. Auth., 16 AD3d 45 (2d Dept. 2005) 
In addition to Dr. Berman's report, Defendant also relies upon the report of his expert radiologist Dr. Audrey Eisenstadt, who opines that Plaintiff's MRI films taken sixteen days after the accident on November 22, 2022, do not show any objective evidence of cervical bulges or herniations. See Cortez v. Bray, 192 AD3d 451 (1st Dept. 2021). Dr. Eisenstadt also reviewed an MRI of Plaintiff's shoulder taken on January 4, 2023, approximately 12 weeks after the accident. While Dr. Eisenstadt's report admits the presence of a "small partial tear of the distal supraspinatus tendon," she opines that there is no active inflammation or other indication that the tear was the result of a recent traumatic injury. Moreover, Dr. Berman affirms that this condition was resolved without limitation by the time he examined Plaintiff. Thus, when read in conjunction, the reports submitted by Defendants are sufficient to satisfy their initial burden on the motion that Plaintiff did not suffer a serious injury in relation to the permanent consequential limitation, permanent loss of use, or significant limitation of use categories of Insurance Law §5102. See Staff v. Yshua, 59 AD3d 614 (2d Dept. 2009); see also Nannarone v. Ott, 41 AD3d 441 (2d Dept. 2007).
In relation to the 90 out of 180 day category, Defendants established their entitlement to summary judgment in that Plaintiff admits that he returned to work the day after the accident. See Gaddy v. Eyler, 79 NY2d 955 (1992); see also Abrahamson v. Premier Car Rental, 261 AD2d 562 (2d Dept. 1999). Notably, while this section of Insurance Law §5102 was asserted in Plaintiff's Verified Bill of Particulars, it was not addressed with any detail in either parties' motion. In any event, there is no evidence in the motion record to suggest that Plaintiff was unable to perform "substantially all" of the material acts which constitute his usual and customary activities for at least 90 out of 180 days immediately following the accident. See Gavin v. Sati, 29 AD3d 734 (2d Dept. 2006); see also Licari v. Elliott, 57 NY2d 230 (1982). As Defendants have established their entitlement to summary judgment as a matter of law on all relevant threshold categories, the burden shifts to the non-moving party, in this case Plaintiff Milek, to raise a material question of fact. See Paula v. City of New York, 249 AD2d 100 (1st Dept. 1998).
In opposition, Plaintiff primarily relies upon an affirmation from Dr. Yvette Davidov M.D. whose specialty, certifications and credentials are unknown to this Court, as her curriculum vitae has not been provided. The extent to which Dr. Davidov treated Plaintiff is also unknown because only one medical record has been provided, dated July 3, 2024, after the filing of the present threshold motion. This Court is forced to assume that Dr. Davidov's opinion was formed from this single examination as she has failed to indicate that she reviewed any other medical [*6]records or films in preparation.[FN5]
Thus, Dr. Davidov was unable to consider any evidence of a restricted range of motion contemporaneous to the date of accident. "A contemporaneous doctor's report is important to [prove] causation . . . [and] the absence of a contemporaneous report invites speculation as to causation." Griffiths v. Munoz, 98 AD3d 997 (2d Dept. 2012); see also Perl v. Meher, 18 NY3d 208 (2011); Gblah v. New York City Tr. Auth. 173 AD3d 622 (1st Dept. 2019). Absent evidence of full medical record review, a physical examination conducted more than two years after the date of accident is too remote to properly establish causation. See Jung Ung Moon v. Kumbee Ree P Some, 189 AD3d 628 (1st Dept. 2020).
The failure of Dr. Davidov to identify any records that she reviewed in preparation of her Affirmation is a fatal defect as it forced her to speculate as to what caused the conditions that she allegedly observed. See Irvin v. Limberis, 225 N.Y.S.3d 374 (2d Dept. 2025). Absent a medical record review Dr. Davidov could not rule out Plaintiff's prior ladder accident, or degeneration as causes of the conditions. See Burgos v. Diamond Bricks Inc., 231 AD3d 529 (1st Dept. 2024). Dr. Davidov does not even address Defendants' experts claims that Plaintiff's injuries were not traumatically induced and were rather chronic and degenerative in nature. This is also a fatal flaw in her Affirmation. See Alford v. Morency, 225 AD3d 828 (2d Dept. 2024); see also Dinardo v. Yeshiva Kehilath Yakov, Inc., 218 AD3d 438 (2d Dept. 2023); Rosa v. Delacruz, 158 AD3d 571 (1st Dept. 2018); John v. Linden, 124 AD3d 598 (2d Dept. 2015); Oginsky v. Rasporskaya, 2010 NY Slip Op 32251 (Sup. Ct. Rich. Cty. 2010), aff'd 85 AD3d 990 (2d Dept. 2011). 
Finally, Dr. Davidov's Affirmation states that she performed range of motion testing. Upon examination, Dr. Davidov observed that Plaintiff exhibited a decreased range of motion in his left shoulder, cervical and lumbar spine. Dr. Davidov opines that this decreased range of motion is significant, permanent, and causally related to the accident at issue. However, her Affirmation is also defective in this regard as she fails to identify what authoritative guidelines she utilized to establish her definition of a "normal" range of motion. See Dinc. v. Shalesi, 208 AD3d 558 (2d Dept. 2022); see also Nicholson v. Kwarteng, 180 AD3d 695 (2d Dept. 2020). This would be less relevant if the "normal" range that she used was the same as Dr. Berman's, but it was not. Moreover, Dr. Berman's testing was far more expansive that Dr. Davidov's as she only tested two fields of motion, as compared to the six tested by Dr. Berman. Absent proof of proper testing and a medically accepted standard of "normal," Dr. Davidov's findings are speculative and insufficient to defeat summary judgment. See Skuret v. Yoyo Cab Corp, 169 AD3d 849 (2d Dept. 2019). Moreover, while Dr. Davidov examined Plaintiff's lumbar spine and Defendants' experts did not, there has been no objective evidence offered whatsoever of a lumbar injury in this case. See Harris v. Ariel Transp. Corp., 55 AD3d 323 (1st Dept. 2008). "Absent objective evidence of injury, plaintiffs cannot demonstrate a serious injury." Cattouse v. Smith, 146 AD3d 670 (1st Dept. 2017). Even if the Court were to overlook the fatal deficiencies in Dr. Davidov's Affirmation, Defendant correctly argues that the 12% reduction in range of motion allegedly observed in Plaintiff's left shoulder has been found to be "insignificant" within the meaning of the no-fault statute. See McLoud v. Reyes, 82 AD3d 848 (2d Dept. 2011); Il Chung [*7]Lim v. Chrabaszcz, 95 AD3d 950 (2d Dept. 2012); Waldman v. Dong Kook Chang, 175 AD2d 204 (2d Dept. 1991). 
Beyond the defective Affirmation of Dr. Davidov, Plaintiff has offered no objective evidence sufficient to raise a triable issue of fact. The medical records offered by Plaintiff in opposition to the motion were neither certified, sworn, nor affirmed, and thus are without probative value. See Grasso v. Angerami, 79 NY2d 813 (1991); see also Smith v. Giuffre, 208 AD3d 609 (2d Dept. 2022).
When opposing a "threshold" summary judgment motion, a Plaintiff is required to explain any significant gaps, or a cessation of treatment. Pommells v. Perez, 4 NY3d 566 (2005). Here, Plaintiff testified that he stopped treatment in July 2023 because his "conditions improved," and he was "feeling better" which supports Dr. Berman's finding that Plaintiff presented with no injuries at the time of the IME. See Perez-Vargas v. Aarron, 187 AD3d 485 (1st Dept. 2020); Gomez v. Salmeron, 17 N.Y.S.3d 382 (Sup. Ct. Nass. Cty. 2015). While Dr. Davidov opines that treatment ended because Plaintiff's no-fault benefits expired, and Plaintiff's counsel has offered evidence to established that he was denied treatment in March of 2023 [FN6]
, this supports, rather than contradicts his testimony that he had substantially recovered. C.f. Ramkumar v. Grand Style Transp. Enters. Inc., 22 NY3d 905 (2013) [finding a plaintiff's testimony regarding the cessation of no-fault benefits to be a reasonable excuse for the cessation of treatment where there was evidence of an ongoing injury]. Plaintiff fails to address his own testimony that his condition had improved over the course of treatment and that he stopped seeking care as a result. See Gibbs v. Hee Hong, 63 AD3d 559 (1st Dept. 2009).
As established above, Defendants have met their initial burden of establishing the absence of a "serious injury" as defined by the Insurance Law. In opposition, Plaintiff has failed to offer sufficient evidence in admissible form to defeat this showing and raise a triable issue of fact. See Scala v. Benitez, 216 AD3d 1190 (2d Dept. 2023); see also Gordon v. Valencia, 232 AD3d 725 (2d Dept. 2024). Accordingly, for the reasons set forth above, and the additional reasons set forth in Defendants' moving papers, Defendants' motion for summary judgment on the issue of the statutory serious injury threshold is hereby granted. See Monvil v. Perlman, 206 AD3d 905 (2d Dept. 2022). This constitutes the Decision and Order of the Court on all issues raised in relation to motion sequence number 002. This ruling renders the liability finding of motion 001 moot. Matter is dismissed with prejudice.
Dated: March 24, 2025
Hon. Catherine M. DiDomenico
A.J.S.C.

Footnotes

Footnote 1:This testimony contradicts the uncertified medical records provided which contain several different addresses in Brooklyn, Manhattan and Staten Island.

Footnote 2:While not disqualifying for this motion, this calls into question her ability to offer an expert opinion at trial. See e.g. Brookman v. Angarita, 2014 NY Slip Op. 32112 (Supt. Ct. Suff. Cty. 2014). 

Footnote 3:While Dr. Davidov observed range of motion deficits in Plaintiff's Lumbar spine, she does not indicate the presence of an injury to that part of his back.

Footnote 4:While Dr. Davidov's affirmation indicates that prior MRIs revealed the injuries claimed by Plaintiff, there is no indication that she reviewed the films, a radiologist's report, or a similar document.

Footnote 5:While Dr. Davidov's Affirmation alludes to prior treatment at her office, no medical records have been provided to establish this, Plaintiff was unable to identify his doctor by name, and Defendants argue that it is unlikely that any prior treatment occurred.

Footnote 6:The "No-Fault" denial letter provided includes a finding that Plaintiff was no longer disabled from accident-related injuries and that all benefits would terminate on March 15, 2023.